IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DOUGLAS COFFEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 13 C 2726 |
| ) | |
| MENARD, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Plaintiff Douglas Coffee filed this personal injury lawsuit against Menard, Inc. after suffering injuries from a barbecue grill that fell on him while he was shopping in Defendant's store. Defendant Menard, Inc. moved for summary judgment and to strike the expert testimony proffered by Plaintiff. The Court denies the motion for summary judgment for the reasons set forth below and grants the motion to strike.

**BACKGROUND**

On March 29, 2011, Coffee was a customer in defendant's store in Matteson, Illinois. (Def.'s Rule 56.1(a)(3) Stmt. of Undisputed Facts ("Def.'s Stmt.") ¶ 5.) Coffee was walking down one of the store's main aisles towards the checkout counters. (Id. at ¶ 10.) There was a barbeque grill on display to his right, sitting on a raised platform approximately four inches high. (Id. at ¶¶ 11-12.) The front of the grill faced the main aisle, behind which unopened grill boxes extended for approximately four to six feet down a narrower side aisle perpendicular to the aisle in which Coffee was walking. (Id. at ¶ 13; see also id. at ¶¶ 57-58 (the main aisle was 8-10 feet wide; the side aisle was approximately 5 feet wide).) The grill boxes protruded approximately six to eight inches into

the side-aisle walkway. (Id. at ¶ 15.)[1] Coffee noticed a young girl, approximately 11 to 13 years old, moving in his direction in the side aisle. (Id. at ¶ 13.) According to Coffee, the girl was "maneuvering" an empty shopping cart around boxes in the aisle. (See Pl.'s Resp. to Def.'s Stmt. ¶ 14; Coffee Dep. at 42, 65-66.) The employee responsible for managing that portion of the store, Michael Connely, testified that both conditions — boxes jutting into the aisle and boxes sitting in the aisle itself — were contrary to Menard's policy and practice. (Def.'s Stmt. ¶ 55; Pl.'s Stmt. of Add'l Facts ¶¶ 11-14.) The boxes on the platform should have been flush with the platform's edge. (Pl.'s Stmt. of Add'l Facts ¶ 13.) Connelly further stated that ff someone in his department sees boxes protruding into the aisle, it is their obligation to correct the issue. (Id. at ¶ 14.) Also, according to Connely, employees stock grill boxes from a pallet directly onto the platform. (Def.'s Stmt. ¶ 54.) They do not stack the boxes in the aisles. (Id. at ¶ 55.)

Coffee noticed the girl stop, then "simultaneously" the grill on the platform tipped towards him. (Id. at ¶ 16.) The grill struck Coffee's right wrist when he extended his arm to prevent the grill from falling on him. (Id. at ¶¶ 21-22.) When the grill struck him, he felt something "pop" in his shoulder. (Coffee Dep. at 55.) He then pushed the grill back onto the display with help from another customer, whom Coffee believed was with the young girl pushing the cart. (Id. at ¶¶ 23-24.) From

---

[1] In his response to Menard's statement of facts, Coffee contends that the boxes "protruded four to six feet *into* the aisle." (Pl.'s Resp. to Def.'s Stmt. ¶ 15 (emphasis added).) Coffee appears to be conflating two separate dimensions. During his deposition, Menard's counsel asked Coffee "how far *back in the aisle* were these boxes extending out?" (Coffee Dep., attached as Ex. B to Def.'s Stmt., at 67 (emphasis added).) Coffee responded, "I want to say maybe four, six feet, somewhere in there." (Id.) Menard's counsel then rephrased Coffee's response — "So four to six feet the boxes were extending into the aisle?" — and Coffee confirmed his testimony ("Right"). (Id.) It is apparent from the context of this exchange that Coffee was testifying about how far the boxes extended *along* the side aisle, not *into* the walkway. Indeed, his testimony does not make sense otherwise: it is undisputed that the side aisle was only about 5 feet wide. (See Def.'s Stmt. ¶ 58.)

there, Coffee went to the checkout counter and left the store without telling any Menard employee about what had happened. (Id. at ¶¶ 29-31.) He testified that he did not realize the extent of his injury until he attempted to open the door of his truck in the parking lot. (See Pl.'s Stmt. of Add'l Facts ¶ 2; Def.'s Resp. to Pl.'s Stmt. of Add'l Facts ¶ 2; Coffee Dep. at 77 (testifying that he realized he could not lift his arm above a certain height when he attempted to unlock the vehicle's door).) That evening, he went to the emergency room at St. James Hospital for treatment. (Pl.'s Stmt. of Add'l Facts ¶ 3.)

The next day, March 30, 2011, Coffee returned to the store. (Id. at ¶ 4.) He told a store manager, Assunta Hildebrand, that a girl pushed a shopping cart into a grill and that he had attempted to catch it before it fell. (Def.'s Stmt. ¶¶ 36, 41-42.) He also photographed the grill display. (Pl.'s Stmt. of Add'l Facts ¶ 4.) According to Coffee, someone had pushed the boxes that had protruded into the aisle further onto the platform. (Id.) Hildebrand took her own pictures on or about April 12, 2011 after she received a phone call from Menard's insurance company. (Id. at ¶ 7.) There are no boxes behind the grill on the platform in Hildebrand's pictures, and the grill itself is set further back from the platform's edge. (See Photographs, dated Apr. 12, 2011, attached as Ex. 4 to Pl.'s Stmt. of Add'l Facts.)

## DISCUSSION

Coffee filed a single-count claim against Menard for negligence. Menard moved for summary judgment on that claim and moved to the strike expert testimony that Coffee relies on in his response to its motion.

**I.     Menard's Motion to Strike**

Coffee has retained Terrence Grisim, a "Certified Safety Professional," to testify regarding whether Menard properly set up its grill display. (See Grisim Aff., attached as Ex. C to Pl.'s Stmt. of Add'l Facts, ¶ 2.) Grisim states in his affidavit that he reviewed deposition transcripts and other litigation materials to familiarize himself with the case. (Id. at ¶ 4.) Citing the "National Safety Council Accident Prevention Manual for Business and Industry Administration and Programs" and his "46 years of retail safety experience," Grisim states that retail displays should be "stable" and that retailers should "immobilize" wheeled merchandise. (Id. at ¶ 5.) Grisim notes that Coffee's March 30, 2011 photographs show the grill sitting at the platform's edge with a "loosely placed light weight chain draped over the axle." (Id.) The chain "does not appear to be either intended to or adequate for immobilizing the grill." (Id.) He concludes that "the grill on display was not set up properly, and as a result, placed customers at a risk of injury." (Id.)

Menard has moved to strike Grisim's testimony for failing to comply with Federal Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "[U]nder the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." See Daubert v. Merrell Dow

Pharms., 509 U.S. 579, 589 (1993); see also Stuhlmacher v. Home Depot U.S.A., Inc., 774 F.3d 405, 409 (7th Cir. 2014). The Supreme Court later clarified that this "gatekeeping" function applies to all expert testimony, even if it is not "scientific" in nature. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 149 (1999); see also Manpower, Inc. v. Insurance Co. of Pennsylvania, 732 F.3d 796, 806 (7th Cir. 2013).

Grisim's testimony is neither reliable nor relevant. The quoted portion of the National Safety Council manual does not establish any standard against which an expert could assess a particular retail display. It merely states that displays should be "stable," and that retailers should not stack merchandise "too high." (Grisim Aff. ¶ 5.) Grisim does not explain *how* he applied his retail safety experience to evaluate the chain's strength, or the distance between grill's wheels and the platform's edge. He did not perform any tests, and he has not cited any relevant prior experience with similar displays. (See Def.'s Mot. to Strike ¶¶ 10-11.) His testimony is also not relevant. See Stuhlmacher, 774 F.3d at 409 ("An expert's testimony qualifies as relevant under Rule 702 so long as it assists the jury in determining any fact at issue in the case."). Grisim simply draws common-sense conclusions that jurors without his experience are equally qualified to make. See United States v. Christian, 673 F.3d 702, 710-11 (7th Cir. 2013) ("'[E]xpert testimony does not assist where the jury has no need for an opinion because it easily can be derived from common sense, common experience, the jury's own perceptions, or simple logic.'") (quoting 29 Charles Alan Wright & Victor James Gold, Federal Practice & Procedure § 6264 (1997)). A grill is more likely to fall if it sits near the edge of a platform. A loose, thin chain will not hold a heavy object as securely as a taut, thick chain. A jury

can grasp these basic concepts without expert testimony. The court grants Menard's motion to strike Grisim's testimony.[2]

## II. Menard's Motion for Summary Judgment

### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must construe "all facts and reasonable inferences in the light most favorable to the nonmoving party." See Empress Casino Joliet Corp. v. Johnston, 763 F.3d 723, 728 (7th Cir. 2014). "A factual dispute is 'genuine' only if a reasonable jury could find for either party." Nichols v. Michigan City Plant Planning Dept., 755 F.3d 594, 599 (7th Cir. 2014) (citation and internal quotation marks omitted). When the non-movant has the burden of proof, the moving party can satisfy its burden on summary judgment by "pointing out to the district court" that there is no evidence supporting the nonmovant's claim or defense. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); see also Modrowski v. Pigatto, 712 F.3d 1166, 1167 (7th Cir. 2013). "Upon such a showing, the nonmovant must then 'make a showing sufficient to establish the existence of an element essential to that party's case.'" Modrowski, 712 F.3d at 1168 (quoting Celotex, 477 U.S. at 322).

### B. Whether Coffee Has Established a Material Factual Dispute Precluding Summary Judgment on His Negligence Claim.

"To prevail on a claim of negligence under Illinois law, a plaintiff must prove the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." Vesely v. Armslist LLC, 762 F.3d 661, 665 (7th Cir. 2014)

---

[2]/ Given the court's conclusion, it is unnecessary to address Grisim's qualifications as an expert.

(citation and internal quotation marks omitted).  Menard concedes that it owed a duty of care to Coffee as a customer in one of its stores.  (See Def.'s Mem. at 5.)  It argues, however, that Coffee has not produced evidence supporting breach and causation.

> 1. **There Is a Material Factual Dispute Regarding Whether Menard Breached its Duty of Care.**

Whether the defendant breached its duty of care is ordinarily a question of fact for the jury. *See Adams v. Northern Illinois Gas Co.*, 809 N.E.2d 1248, 1257 (Ill. 2004); *see also Vesely*, 762 F.3d at 665.  The court may decide the issue as a matter of law, however, if "there is no material issue regarding the matter or only one conclusion is clearly evident."  *Williams v. Univ. of Chi. Hosps.*, 688 N.E.2d 130, 134 (Ill. 1997); *see also Furry v. U.S.*, 712 F.3d 988, 992 (7th Cir. 2013). As a threshold matter, the court rejects Menard's suggestion that Coffee must produce evidence corroborating his testimony to survive summary judgment. (*See* Def.'s Mem. at 5.)  The fact that Connely did not notice anything "irregular or out of the ordinary" in March 2011 creates, at most, a factual dispute about the platform's condition on March 29, 2011.  (See Def.'s Stmt. ¶ 52; but see Pl.'s Stmt. of Add'l Facts ¶ 9 (Connely could not recall whether he worked on March 29, 2011).) In a similar vein, Menard argues that "no one inspected the subject grill before or after the occurrence" because Coffee did not notify any Menard employee until the next day.  (Id.)  Coffee's testimony about the store's appearance on the day in question is relevant, admissible evidence. Arguably, his testimony would be more compelling if he had obtained testimony from other witnesses who corroborated his account.  The court does not, however, weigh the evidence when deciding whether to grant summary judgment.  *See Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014) (The court's "job when assessing a summary judgment motion is not to weigh evidence, make

credibility determinations, resolve factual disputes and swearing contests, or decide which inferences to draw from the facts.").

Menard argues that Coffee's claim is analogous to "foreign substance" cases in which the plaintiff must prove that the defendant had actual or constructive knowledge of the condition that caused the plaintiff's injury. (See Def.'s Mem. at 6.) "Liability can be imposed when a business's invitee is injured by slipping on a foreign substance on its premises if the invitee establishes that (1) the substance was placed there by the negligence of the business; (2) the business had actual notice of the substance; or (3) the substance was there a sufficient length of time so that, in the exercise of ordinary care, its presence should have been discovered, i.e., the business had constructive notice of the substance." *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 649 (7th Cir. 2014) (Illinois law); *see also Donoho v. O'Connell's, Inc.*, 148 N.E.2d 434, 437-38 (Ill. 1958); *Reed v. Wal-Mart Stores, Inc.*, 700 N.E.2d 212, 214 (Ill. Ct. App. 1998). Coffee argues that Menard's employees were responsible for the display's condition, and therefore he does not need to produce evidence indicating Menard's actual or constructive knowledge. (See Pl.'s Resp. at 6-7.) In order to create a triable issue of fact with respect to that issue, Coffee must present "some evidence" that the boxes were obstructing the aisle due to Menard's negligence rather than a customer's. *Zuppardi,* 770 F.3d at 649. "To prove that the defendant business, as opposed to a third person, created the dangerous condition, Illinois courts have required the plaintiff to (1) show that the foreign substance was related to the defendant's business and (2) 'offer[ ] some further evidence, direct or circumstantial, however slight, such as the location of the substance or the business practices of the defendant, from which it could be inferred that it was more likely that defendant or his servants, rather than a customer, dropped the substance on the premises . . . .'" Id. at 649-50 (quoting *Donoho*, 148 N.E.2d at 439).

Coffee has created a triable issue with respect to Menard's responsibility for the grill display's condition. The merchandise and the display are clearly related to Menard's business. Menard argues that Coffee cannot satisfy the second prong of the analysis because "customers from time to time would pull grill boxes off the platform." (Def.'s Stmt. ¶ 55; see also Def.'s Reply at 6.) As the Illinois Supreme Court explained in *Donoho*, the relevant question is not whether a customer *could have* caused the dangerous condition to arise. *See Donoho*, 148 N.E.2d at 441 ("[T]he query is not whether it was also possible that a customer could have dropped the onion ring . . . ."). The question is "whether the evidence makes it more probable that the defendant or his servants" are responsible. Id. Menard's employees are responsible for creating and maintaining product displays. (See Def.'s Stmt. ¶¶ 49-50, 54; Pl.'s Stmt. of Add'l Facts ¶¶ 10-14.) Construing the evidence in the light most favorable to Coffee, there were "boxes" in the side aisle itself. (See Pl.'s Resp. to Def.'s Stmt. ¶ 14; Coffee Dep. at 40, 46, 61, 65-66.) There were also boxes protruding into the aisle from the platform. (Def.'s Stmt. ¶ 15; Pl.'s Resp. to Def.'s Stmt. ¶ 14; Coffee Dep. at 46.) It is possible that one or more customers removed boxes from the shelves and placed them in the aisle, *and* handled the boxes on the platform in such a way that they obstructed the walkway. A reasonable jury could find, however, that it is more probable that a Menard's employee haphazardly stocked the aisle, or else left the job incomplete. Thus, the court will not require Coffee to show actual or constructive knowledge to survive summary judgment.

**2. There Is a Material Factual Dispute Regarding Whether Menard's Negligence Caused Coffee's Injuries.**

Menard argues that Coffee has not produced sufficient evidence that its conduct caused his injuries. Proximate cause is ordinarily a question of fact for the jury, but the court may decide the issue as a matter of law "where the facts as alleged show that the plaintiff would never be entitled

to recover." *Abrams v. City of Chicago*, 811 N.E.2d 670, 674 (Ill. 2004); *see also Vesely*, 762 F.3d at 665; *Furry*, 712 F.3d at 992. Under Illinois law, proximate cause has two elements: "cause in fact" and "legal cause." *Abrams*, 811 N.E.2d at 674-75; *see also Buechel v. U.S.*, 746 F.3d 753, 764 (7th Cir. 2014). A defendant's conduct is a "cause in fact" of the plaintiff's injury if, "absent that conduct, the injury would not have occurred." <u>Abrams</u>, 811 N.E.2d at 675. "'Legal cause,' by contrast, is largely a question of foreseeability. The relevant inquiry is whether 'the injury is of a type that a reasonable person would see *as a likely result* of his or her conduct.'" <u>Id.</u> (quoting *First Springfield Bank & Trust v. Galman*, 720 N.E.2d 1068, 1073 (Ill. 1999)) (emphasis in original). Although Menard does not use the terms "cause in fact" and "legal cause," the court construes its memorandum to argue that Coffee cannot satisfy either element.

      a. *Cause in Fact.*

Menard argues that Coffee's theory that the protruding boxes caused the grill to fall is speculative. (<u>See</u> Def.'s Mem. at 7-8.) "When attempting to prove causation, a plaintiff must show circumstances that justify an inference or probability, as opposed to a mere possibility." *Richardson v. Bond Drug Co. of Ill.*, 901 N.E.2d 973, 977 (Ill. Ct. App. 2009); *see also Gyllin v. College Craft Enterprises Ltd.*, 633 N.E.2d 111, 117 (Ill. Ct. App. 1994) (similar). As Menard points out, Coffee did not see the girl's cart strike the protruding boxes. (<u>See</u> Def.'s Mem. at 7.) He may, however, satisfy his burden to show causation using circumstantial evidence:

> "Negligence may be established by using either direct or circumstantial evidence and . . . the use of circumstantial evidence is not limited to those instances in which the circumstances support only one logical conclusion. Instead, circumstantial evidence will suffice whenever an inference may reasonably be drawn therefrom . . . ."

*Gyllin*, 633 N.E.2d at 713 (quoting *Mort v. Walter*, 457 N.E.2d 18, 21 (1983)) (citations omitted); *see also Buechel*, 746 F.3d at 765 ("[C]ircumstantial evidence of causation is still evidence."). The

court concludes Coffee has produced circumstantial evidence sufficient to survive summary judgment. Construing the evidence in the light most favorable to Coffee, the girl maneuvered her shopping cart around boxes in the side aisle and abruptly stopped near the protruding boxes. A reasonable jury could infer from these facts that the girl struck one of those boxes, pushing the adjacent grill into the main aisle.

*Richardson* and *Gyllin*, cited by Menard, are distinguishable. The plaintiff in Richardson slipped and fell in defendant's store. *Richardson*, 901 N.E.2d at 974. He testified that he did not know what caused him to slip, but he assumed that there was liquid on the floor because his clothes were wet after the fall. Id. at 976. The store manager testified that she did see any liquid on the floor before the plaintiff slipped, and noted that the plaintiff's shoes may have been wet from snow. Id. The court held that the plaintiff's claim was too speculative to support a finding that the defendant's negligence caused his injury: "[t]he existence of one fact cannot be inferred when a contrary fact can be inferred with equal certainty from the same set of facts." Id. at 977. Unlike the plaintiff in Richardson, Coffee has not asked the court to choose between two equally plausible inferences from undisputed facts. Coffee infers from his observations that the girl struck the grill boxes with her cart, which pushed adjacent grill into the main aisle. The only other theory in the record is Menard's suggestion that the girl pushed the cart directly into the grill. (*See* Def.'s Mem. at 8; *see also id.* at ¶ 42 (stating that Coffee told Hildebrand that the cart hit the grill).) This theory, however, is contrary to Coffee's deposition testimony. (*See* Coffee Dep. at 42 (testifying that the girl was "probably a box, two boxes away" when she stopped).) The fact that he told Hildebrand a different story may undermine his credibility, but that is an issue for the jury.

In *Gyllin*, one of the defendant's employees was applying stain to the exterior of a house when he spilled some on himself. *Gyllin,* 633 N.E.2d at 113. He later left the job site in his car,

leaving the windows up to keep out the rain. Id. After driving for some period of time, he drifted over the center line and collided head-on with the plaintiffs' car. Id. The plaintiffs argued that fumes from the stain caused the defendant's employee to pass out behind the wheel, and that the defendant had negligently failed to warn its employees of that danger. Id. at 115-16. The plaintiffs retained an expert who testified that the stain could have impaired the employee's ability to drive. Id. at 117-18. The employee had testified, however, that he had not experienced "any physical impairment due to inhalation of the stain." Id. at 115, 118. Under the circumstances, the expert's testimony was too speculative to support a finding that stain fumes had caused the accident. Id. at 118 (concluding that the expert's testimony was "mere conjecture" and "not based on concrete facts"). Unlike the plaintiffs in Gyllin, Coffee has not drawn an inference from purported facts that are not in record. There is evidence that boxes immediately adjacent to the grill were protruding into the aisle. The girl pushing the shopping cart stopped near those boxes, and then the grill fell. This is sufficient to create a triable issue with respect to whether Menard's conduct was the "cause in fact" of Coffee's injury.

       b. *Legal cause.*

Menard argues that the girl's conduct was an unforeseeable event breaking the chain of causation. In cases involving the intervening acts of third persons, "the test is 'whether the first wrongdoer reasonably might have anticipated the intervening efficient cause as a natural and probable result of the first party's own negligence.'" *Abrams*, 811 N.E.2d at 675 (quoting *Galman*, 720 N.E.2d at 1071). If the defendant's negligence "does nothing more than furnish a condition by which the injury is made possible, and that condition causes an injury by the subsequent, independent act of a third person, the creation of the condition is not the proximate cause of the injury." *Galman*, 720 N.E.2d at 1071; *see also Abrams*, 811 N.E.2d at 675.

*Wiebel v. Mid-Continent Bottlers, Inc.*, 388 N.E.2d 475 (Ill. Ct. App. 1979) is the only case that Menard analyzes in any detail. (*See* Def.'s Mem. at 8-9; *see also* Def.'s Reply at 8-9.) In *Wiebel*, the plaintiff sued two soda distributors for injuries she sustained when a bottle fell off a grocery store shelf and shattered. *Wiebel*, 388 N.E.2d at 477. The court concluded that the defendants had a duty to exercise reasonable care when stacking their product in stores. Id. at 478. It held, however, that the plaintiff had not produced evidence supporting the other elements of her claim. Id. at 478-79. The plaintiff testified at trial that "there was no disarray in the section of the display [where the defendant had stacked the bottles], that there was nothing unusual about the way in which the pop was stored or shelved, and that the shelves appeared normal." Id. at 477. Thus, there was no evidence that the defendants had negligently stocked the shelves. Id. at 478. With respect to causation, the plaintiff argued that the defendants were liable for her injuries even if a third party had placed their product "in a precarious position" because "the act of that third person is foreseeable to these defendant distributors and does not break the chain of legal causation." Id. at 479. The court rejected this argument, concluding that the presence of the bottles on the shelves was merely a "condition" that made the plaintiff's injury possible. Id.

*Wiebel* would be analogous if Coffee based his claim on the mere fact that Menard displays its products on open shelves. Unlike the plaintiff in *Wiebel*, however, Coffee has submitted evidence that the grill boxes were in "disarray," id. at 477, and that Menard was responsible. (See supra at II.B.1.) There is a triable issue with respect to proximate cause even assuming that the girl had room in the aisle to avoid the protruding boxes. (*See* Def.'s Stmt. ¶¶ 57-61; *but see* Coffee Dep. at 40 ("Q. Was she going — I mean in your opinion was she going fast pushing the cart? A. No, she was trying to maneuver through a bunch of boxes that were in the aisle.").) An injury may have more than one proximate cause. *See Unger v. Eichleay Corp.*, 614 N.E.2d 1241, 1246 (Ill. Ct. App. 1993).

Connely testified that store personnel are supposed to display merchandise flush with the display's edge, and to correct nonconforming displays when they notice them. A reasonable jury could conclude from this evidence that Menard was aware that protruding boxes were potentially dangerous, even if customers have sufficient room in the aisles to avoid them. Coffee has submitted sufficient evidence that Menard's negligence caused his injuries to survive summary judgment.

## CONCLUSION

The court grants Menard's motion to strike [41], and denies its motion for summary judgment [26].

DATE: March 25, 2015

_____
Virginia M. Kendall
United States District Judge